UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

MARCIE HAMILTON et al.;

     Plaintiffs,

v.                           No. 3:10-cv-355 MCR/EMT

WENDELL HALL,

     Defendant.

_____/

## DECLARATION OF PLAINTIFFS' EXPERT STEVE J. MARTIN

     I, STEVE J. MARTIN, am over the age of 18 and make this declaration:

## I. Introduction

     1.     I have been retained by counsel for the plaintiffs to render an opinion in this case regarding Sheriff Hall's policy and practice ("Postcard-Only Mail Policy") that forbids inmates of the Santa Rosa County, Florida, Jail ("Jail") from sending letters enclosed in envelopes to their parents, children, spouses, friends, other loved ones, or other correspondents.  Under this policy, Jail inmates may only write their correspondences in a postcard format except for privileged/legal mail.

     2.     In my thirty-eight years experience in corrections in hundreds

of jails and prisons in more than thirty-five states in the U.S., policies

limiting outgoing mail correspondence to postcards were unprecedented

until recently.

## II.  Qualifications of the Expert

3.      I am an independent consultant in the field of corrections with

over 38 years experience in correctional administration.  I am also admitted

to practice law in the state of Texas.  My general qualifications as an expert

in the field of corrections are set forth in my *Curriculum Vitae*, attached

hereto as Martin Exhibit A.  In addition to these general qualifications, I

have direct experience with the implementation and management of

correspondence rules and regulations in both jails and prisons. From 1981 to

1985, I was employed by the Texas Department of Corrections ("TDC") as

Legal Counsel, and subsequently as General Counsel and Chief of Staff to

the Director.  During this time, one of my responsibilities was to assist in the

development of correspondence rules for the TDC in settlement of a class

action lawsuit.  Subsequent to settlement of the lawsuit, I was also involved

in monitoring compliance with the terms and conditions of the settlement

agreement.  I was often asked to consult with the Review Committee

charged with hearing appeals for rejected or denied correspondence and

publications.  One of my staff attorneys, who reported directly to my office, routinely met with the Review Committee in order to provide legal advice on correspondence and publication issues.

4.      I have also reviewed and/or assisted in the development of correspondence rules in a variety of confinement systems such as the state of New York, the U.S. Immigration and Naturalization Service and the Commonwealth of Puerto Rico.   Currently, I am involved in prison and jail litigation in seventeen states and the U.S. Virgin Islands.  I am presently serving as a federal court monitor/court appointed expert/subject matter expert in three class action cases in Florida (metropolitan jail in Broward County), New York City (metropolitan jail), and Ohio (juvenile detention system).    From 1994-2008, I worked as a corrections expert for the U.S. Department of Justice, Civil Rights Division.  I am currently under contract as a corrections expert for the Department of Homeland Security, Office of Civil Rights and Civil Liberties.

5.      I am co-author of Texas PRISONS: THE WALLS CAME TUMBLING DOWN (Texas Monthly Press, 1987); and contributed to COURTS, CORRECTIONS, AND THE CONSTITUTION (Oxford University Press, 1990) and BUILDING VIOLENCE: HOW AMERICA'S RUSH TO INCARCERATE CREATES

MORE VIOLENCE (Sage Publications, 2000). I have published numerous articles related to correctional issues in law reviews and professional journals. I am currently on the Editorial Board of the CORRECTIONAL LAW REPORTER, Civic Research Institute. I have also served on the adjunct or visiting faculties of six universities, including the University of Texas School of Law, and was a visiting scholar at the Queens University School of Law, Belfast, Northern Ireland. I have been qualified as an expert in the field of corrections and have testified as such on more than thirty occasions, mostly in federal courts.

### III.  Publications Authored by the Expert Witness

6.     A listing of publications I have authored/co-authored may be found under the heading "Publications/Paper" in my *Curriculum Vitae,* attached hereto as Martin Exhibit A.

### IV.  Testimony as an Expert Witness at Trial or Deposition

7.     I have been qualified as an expert in the field of corrections and have testified as such on more than thirty occasions in federal courts.  A listing of cases in which I have testified at trial or deposition within the preceding four years is attached hereto as Martin Exhibit B.

## V.  Compensation

8.      I am being compensated at a rate of $150 per hour for in-office work and $1,200 per day for work performed on-site.

## VI.  Methodology and Principles Applied In Formulating Opinion

9.      I have reviewed the following materials specific to this case:

(a)      Third Amended Complaint (DE 43) and the Sheriff's Motion to Dismiss (DE 7);

(b)      Plaintiffs' Motion for Class Certification (DE 7) and the Sheriff's Response (DE 13)

(c)      A draft of the Plaintiffs' Motion for Preliminary Injunction (DE 50)

(d)      The Sheriff's public records produced in response to Benjamin Stevenson's August 3, 2010, public records request, including the following:

DE 50.4      Outgoing Mail Procedure, Standard Operating Procedure
No. 15.48 - (Effective August 14, 2010)

DE 50.5 Outgoing Mail Procedure for Security Staff, Standard Operating Procedure No. 15.48 - (Effective March 26, 2009)

DE 50.6 Inmate Mail, General Order No. O-071 (Effective August 14, 2010)

DE 50.7 Inmate Mail, General Order No. O-071 (Effective August 18, 2007)

DE 50.8 Notice "Effective July 15, 2010"

DE 50.9 Visitation Schedule

DE 50.10 Inmate Handbook

10. I have reviewed the following materials relating to outgoing mail policies at other facilities or the proposed policies by organizations:

(a) Florida Department of Corrections' Routine Mail Regulation, § 33-210.101, Fla. Admin. Code;

(b) U.S. Department of Justice, Federal Bureau of Prisons' *Program Statement No. 5265.11* regarding Correspondence (July 9, 1999), available at http://www.bop.gov/policy/progstat/5265_011.pdf, which is in

part codified in 28 C.F.R. § 540.14;

   (c) Federal ADX "supermax" Prison's outgoing mail policies, available from http://www.bop.gov/locations/institutions/flm/index.jsp;

   (d) Florida Sheriff's Association's *Florida Model Jail Standards* (2011), § 9.03 ("Mail"), available from http://www.flsheriffs.org/our_program/florida-model-jail-standards/;

   (e) Texas Jail Commission, *Minimum Jail Standards*, 37 Tex. Admin. Code Pt. 9, and in particular 37 Tex. Admin. Code § 291.2 ("Inmate Correspondence Plan");

   (f) Broward County, Florida, Sheriff, *Guidelines for Inmate Mail*, available at http://sheriff.org/about_bso/dodcc/info/;

   (g) AMERICAN CORRECTIONAL ASSOCIATION (ACA), PERFORMANCE STANDARDS FOR ADULT LOCAL DETENTION FACILITIES (4th ed., 2004);

   (h) AMERICAN CORRECTIONAL ASSOCIATION (ACA), MANUAL OF CORRECTIONAL STANDARDS (3rd ed.);

   (i) OFFICE OF THE UNITED NATIONS HIGH COMMISSIONER

FOR HUMAN RIGHTS, HUMAN RIGHTS AND PRISONS (2005), available at

http://www.ohchr.org/Documents/Publications/training11Add3en.pdf.

11.     In reviewing the above materials, I applied a number of sound

correctional practice principles in formulating my opinions. First, the ability

for inmates to maintain family and community relationships and ties, by

mail and otherwise, is an essential component of a sound correctional

operation. It fosters safe and secure management of the inmate while

confined, and facilitates his/her reintegration to the community upon release.

As stated in the ACA's *Manual of Correctional Standards,*

> To confined persons, letters from home and from friends are often as
> important as visits. Permission to write friends or relatives affords inmates
> opportunity to express affection for loved ones and in many instances to
> release feelings of distress and loneliness. Letters are of such **tremendous**
> importance to the inmate that institutions are **glad to encourage**
> correspondence as an integral part of the treatment program.

*Id*. at p. 545 (emphasis added)

12.     Second, policies or practices that unnecessarily inhibit, impede,

or chill, robust inmate correspondence are antithetical to the most basic

principles that govern management of confined persons. This is reflected in

the ACA's *Standard for Local Adult Detention Facilities*:

> When the inmate bears the mailing cost, there is no limit on the volume of
> letters he/she can send or receive or on the length, language, content, or
> source of mail or publications, except when there is reasonable belief that

limitation is necessary to protect public safety or maintain facility order and security.

*Id*. at Standard 4-ALDF-5B-05.

13.     Third, security issues related to outgoing correspondence are routinely and safely managed by confinement operations in the U.S. Correctional managers institute a wide variety of measures that minimize potential threats posed by outgoing correspondence without such a limitation as has been imposed in this matter. Such a blanket policy applicable to all inmates, regardless of the security threat they represent, totally disregards the manner in which security and safety measures are typically applied in a confinement setting, i.e., proportionality between the threat and the security measure. *See* Federal Bureau of Prisons Program Statement, 5265.11 Section 11(c)(l), "Outgoing mail from a sentenced inmate in a minimum or low security level institution may be sealed by the inmate and, except as provided for in paragraphs (c)(1)(a) through (d) of this section, is sent out unopened and uninspected."), codified as 28 C.F.R. § 540.14. The potential security threat represented by outgoing correspondence can be and is most typically addressed by such measures that provide for inspection of mail on a random basis, or when there is a suspicion connected to certain mail or certain prisoners. Managers are certainly free to institute measures specifically directed at, or applied to, high risk inmates. Inspecting every

piece of outgoing mail is not necessary or essential to maintaining jail order or security.

## VII.  Opinion

14.     The Santa Rosa County Sheriff's policy that limits outgoing, non-legal mail to postcards is not necessary or essential to further any legitimate interests in security or order.  The policy unnecessarily limits inmate opportunities to engage in lawful and routinely accepted correspondence practices.

15.     The policy is antithetical to sound inmate governance.  Not only do restrictions on the means of maintaining family and community relationships and ties frustrate the inmates' reintegration to the community upon release, but such restrictions often lead inmates to feel isolated and humiliated, which needlessly complicates the safe and secure management of the facility.

## VIII.  Basis for Opinion

16.     I have reviewed the mail policy for the Florida Department of Corrections (FDOC), which confines over 100,000 persons.  *See* § 33-210.101, Fla. Admin. Code.  FDOC prison officials do not limit inmates'

mail to postcards; inmates are generally allowed to write letters.

17.     I have reviewed the mail policy for the Federal Bureau of Prisons (BOP), a system that confines approximately 208,000 inmates.  BOP prison officials do not limit inmates' mail to postcards; inmates are generally allowed to write letters.   In fact, the Federal Bureau of Prisons "encourages correspondence."  BOP Program Statement, 5265.11, Section 1.

18.     I have reviewed the mail policy for the United States Penitentiary, Administrative Maximum Facility (ADX), the "supermax" facility in Florence, Colorado, which confines inmates with the highest security classifications in the United States.  Having conducted a site inspection at the ADX, I can attest that it is the most secure prison I have visited in my career.  ADX prison officials do not limit inmates' mail to postcards; inmates are generally allowed to write letters.  *See* Admission and Orientation Handbook (2008), p. 5, available at http://www.ohchr.org/Documents/Publications/training11Add3en.pdf.

19.     I have reviewed the Florida Sheriff's Association's *Florida Model Jail Standards* (2011), including its model standard regarding outgoing mail.  The Florida Sheriff's Association does not propose limiting Florida jail inmate mail to postcards.  In fact, it states, "General

correspondence such as between the inmate, the family, and other persons should be encouraged." *Id.* at § 9.03(a).

20.     I have reviewed the Texas Jail Commission's *Minimum Jail Standards*, 37 Tex. Admin. Code Pt. 9.  The Texas Jail Commission does not propose limiting Texas jail inmate mail to postcards.  *See* 37 Tex. Admin. Code § 291.2.

21.     I have reviewed the Broward County Sheriff's inmate mail policy.  The Broward County Sheriff does not limit inmate's mail to postcards; inmates are generally allowed to write letters.

22.     Based on my training and experience, inmates' feelings of isolation and alienation with few or no relationships of value often aggravate their feelings of hopelessness and despair.  In these circumstances, they are more prone to engage in misbehavior directed at other inmates and staff. For those inmates with mental health issues who benefit from frequent and positive contact with family and friends, robust correspondence is extremely important and should be encouraged rather than limited.  Furthermore, jail inmates have an acute sense of fairness.  When arbitrary or needless restrictions are imposed against them, such restrictions inevitably undermine inmates' respect for their jailors and thus harms inmate/staff

relations.

23.    In conclusion, the fact that all of these confinement operations

with which I am familiar throughout the U.S. are able to maintain requisite

levels of security at their facilities without limiting outgoing correspondence

to postcards, provides ample evidence that such a restriction is neither

necessary nor essential to further any legitimate interests in security or order,

and may in practice, actually undermine the orderly operation and

management of the facility.

I declare under penalty of perjury that the foregoing is true and

correct.

Executed on ___April 8___, 2011

_____

Steve J. Martin

# CURRICULUM VITAE

| | |
|---|---|
| **NAME:** | Steve J. Martin |
| **ADDRESS:** | 8513 Adirondack Trail<br>Austin, Texas 78759 |
| **TELEPHONE:** | Office:  (512)346-7607<br>E-mail:  sjmart@sbcglobal.net |
| **DATE OF BIRTH:** | August 27, 1948 |

**EDUCATION:**

| | |
|---|---|
| 1973 | Bachelor of Science<br>Criminology and Corrections<br>Sam Houston State University<br>Huntsville, Texas |
| 1974 | Master of Arts<br>Correctional Administration<br>Sam Houston State University<br>Huntsville, Texas |
| 1981 | Juris Doctor<br>University of Tulsa<br>School of Law<br>Tulsa, Oklahoma<br>(Admitted to Texas State Bar-Card #13106550) |

**EMPLOYMENT:**

| | |
|---|---|
| 1987-Present | Corrections Consultant and Attorney |
| 1986-1987 | Gray & Becker, Attorneys at Law<br>General practice law firm engaged in litigation, administrative law, civil rights and legislative work. |
| 1985-1986 | Texas Office of the Attorney General - Special Assistant Attorney General.  Worked as a consultant to the Chief of the Enforcement Division on litigation involving the Texas Department of Corrections. |

(Vita current as of January 2011)

**Martin Exhibit A**

**STEVE J. MARTIN VITA PAGE 2**
**Employment (continued)**

| | |
|---|---|
| 1981-1985 | Texas Department of Corrections - Executive Assistant to the Director (1984-85); General Counsel (1983-85); Legal Counsel (1981-83)<br>Huntsville, Texas |

As Legal Counsel, I served as the in-house attorney on class action litigation. In 1982, I was given responsibility for providing primary case administration of RUIZ v. ESTELLE (a class action conditions lawsuit in which virtually all operational aspects of the prison system were subject to court orders). From 1983-85, I served as the chief legal officer of the department. I also served as the liaison to the Office of the Special Master in RUIZ as well as liaison to the Office of the Attorney General and the Texas Legislature. From 1984 I also served as the Director's Executive Assistant, an operations position and the third ranking official in the department.

| | |
|---|---|
| 1980-1981 | Tulsa County District Attorney's Office<br>Assistant District Attorney/ Legal Intern<br>Tulsa, Oklahoma |

As an Assistant District Attorney/Legal Intern, I provided representation to county jail officials on civil rights litigation filed by county jail prisoners. I also drafted a set of jail standards adopted by the district judges for operation of the jail.

| | |
|---|---|
| 1975-1980 | United States Probation and Parole Office<br>U.S. Probation and Parole Officer<br>McAllen, Texas (1975-77)<br>Tulsa, Oklahoma (1977-80) |

As a probation officer I supervised an average caseload of 50 to 75 probationers and parolees in addition to conducting pre-sentence and pre-trial diversion reports.

| | |
|---|---|
| 1974 | Federal Bureau of Prisons<br>Federal Corrections Institution Casework Intern<br>Fort Worth, Texas |

**STEVE J. MARTIN VITA PAGE 3**
**Employment (continued)**

After my first year of graduate school, I worked as a summer Casework Intern for the Director of Mental Health Programs at the facility.

1972-1973

Texas Department of Corrections
Correctional Officer
Huntsville, Texas

I was assigned to the Ellis Unit, a maximum security prison, and worked routine security posts such as cellblocks, control center, hall officer, and death row. I also worked at the Goree Unit for female offenders.

**REPRESENTATIVE PROFESSIONAL ACTIVITIES:**

2001-Present

Appointed as a Court Expert, CARRUTHERS v. JENNE, to examine the conditions of confinement in Broward County Department of Detention, Ft. Lauderdale, Florida.

2003-Present

Retained as an expert witness in DISABILITY ADVOCATES, INC. v. NEW YORK STATE OFFICE OF MENTAL HEALTH, et al., involving class action civil rights claims regarding the treatment of mentally ill inmates confined to disciplinary segregation, New York State Department of Corrections.

2004-Present

Appointed as Court Monitor, GATES v. BARBOUR, to monitor capacity orders for the Mississippi Department of Corrections.

2005-Present

Retained as an expert witness, FAIRLEY v. ANDREWS, regarding allegations of excessive force in the Cook County Jail, Chicago, Illinois.

2005-Present

Retained as an expert witness, T.R., P.R., and K.W. v. SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, class action litigation regarding the treatment of mentally ill inmates in the South Carolina Department of Corrections.

**STEVE J. MARTIN VITA PAGE 4**
**Representative Professional Activities (continued)**

2006-Present      Member of Editorial Board, *Correctional Law Reporter.*

2006-Present      Retained as an expert, DITTIMUS-BEY, et al. v. TAYLOR, et al., regarding conditions of confinement at the Camden County Jail, Camden, New Jersey.

2007-Present      Retained as an expert by Independent Fact Finder and Court Montior, S.H. v. STICKRATH, to examine/monitor staff use of force, restraints, seclusion, classification, and youth grievances at the Ohio Department of Youth Services.

2007-Present      Retained as an expert witness, VANDEHEY v. VALLARO, regarding use of force at the Garfield County Jail, Colorado.

2008-Present      Retained as expert witness, SILVERSTEIN v. BOP, regarding confinement at the United States Penitentiary Administrative Maximum ("ADX"), Florence, Colorado.

2008-Present      Retained as an expert witness, CARTY v DEJONGH, regarding conditions of confinement at facilities in St. Thomas, Virgin Islands.

2009-Present      Retained as an expert witness, HICKS v HETZEL, regarding conditions of confinement at the Donaldson Correctional Facility, Bessemer, Alabama.

2010-Present      Retained as an expert witness, SHREVE v FRANKLIN COUNTY JAIL regarding use of force.

2010-Present      Retained as an expert witness, SOLIS v BACA, regarding strip searches at the Los Angeles County Jail.

2010-Present      Appointed as Court Monitor, REYNOLDS v SCHRIRO, to monitor use of restraints by New York City Department of Corrections at the Bellevue and Elmhurst hospitals.

2010-Present      Retained by the Department of Homeland Security, Office for Civil Rights and Civil Liberties as penology expert.

**STEVE J. MARTIN VITA PAGE 5**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2010 | Participated as *amici curiae,* SCHWARZENEGGER v PLATA, regarding prison overcrowding in the California Department of Corrections. |
| 1993-2008 | United States Department of Justice, Civil Rights Division, Special Litigation Section, Corrections Expert. |
| 2005-2008 | Retained as an expert, WILLIAMS v. TASER INTERNATIONAL, INC., regarding use of force at the Gwinnett County Detention Center, Georgia. |
| 2006-2008 | Retained as an expert witness, IKO v. GALLEY, regarding use of force at the Western Correctional Institution, Maryland Department of Public Safety and Correctional Service. |
| 2007 | Participated as *amici curiae*, IQBAL v. ASHCROFT, U. S. Court of Appeals, 2nd Cir., regarding treatment of detainees at the Metropolitan Detention Center, New York City. |
| 2007-2008 | Retained by the U.S. Attorney's Office, New York City, to examine staff use of force at the Westchester County Jail, White Plains, New York. |
| 2008-2009 | Retained as an expert witness, JACKSON v. GERL, regarding use of force at the Wisconsin Secure Program Facility, Boscobel. |
| 2007-2009 | Retained as an expert witness, YOUNG v. COOK COUNTY,  regarding the strip search policies of the Cook County Jail. |
| 2007-2008 | Retained as an expert witness, RUTLEDGE v. COOK COUNTY, regarding staff use of force at the Cook County Jail. |
| 2006-2008 | Retained as an expert witness, WILKERSON, et al. v. STALDER, regarding the placement of inmates in long-term segregation at the Louisiana State Penitentiary, Angola. |

**STEVE J. MARTIN VITA PAGE 6**
**Representative Professional Activities (continued)**

2006-2007                    Retained as a consulting expert by the State Attorney, 13th
                             Judicial Circuit, Tampa, Florida,  In Re: In-Custody Death
                             of Martin Lee Anderson while confined at the Bay County
                             Boot Camp, Panama City, Florida.

2004-2006                    Retained as an expert witness, INGLES v. TORO, class
                             action use of force litigation involving the New York City
                             Department of Corrections.

2005-2006                    Retained as an expert witness, GILLIS v. LITSCHER, et al.,
                             regarding placement of an inmate in the Behavior
                             Management Program, Wisconsin Secure Program Facility.

2005                         Member, Travis County, Citizen Bond Advisory Committee;
                             Chairman, Sub-Committee on Jails, Travis County, Texas.

2005                         Participated as *amici curiae*, WILKINSON v. AUSTIN, No.
                             04-495, Supreme Court of the United States; placement
                             process for inmates in supermax prisons.

2002-2005                    Appointed as Court Monitor, UNITED STATES v. NASSAU
                             COUNTY, to monitor Settlement Agreement on use of force,
                             Nassau County Corrections Center, Long Island, New York.

2002-2005                    Retained as a consultant by the Georgia Attorney General's
                             Office to review use of force practices at the Phillips
                             State Prison, Buford, Georgia.

2003-2004                    Retained as an expert witness, HARGETT v. ADAMS, class
                             action litigation regarding conditions of confinement at the
                             Joliet Treatment & Detention Facility, Illinois.

2003-2004                    Retained as an expert witness, NEW TIMES v. ADAMS,
                             class action litigation regarding censorship practices of the
                             Colorado Department of Corrections.

2002-2004                    Retained by the United States Attorney's Office, San
                             Francisco, as an expert in UNITED STATES v. LEWIS;
                             criminal civil rights prosecution for civil rights violations at

the Pelican Bay State Prison.

**STEVE J. MARTIN VITA PAGE 7**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2003-2004 | Retained as a consultant by the Georgia Attorney General's Office in BURNS v. WETHERINGTON, regarding civil rights claim for failure to protect an inmate at the Lee Arrendale State Prison, Alto, Georgia. |
| 2004 | Retained as a consultant to the Ohio Department of Youth Services on staff use of force. |
| 2004 | Retained as a consultant by the Los Angeles County, Special Counsel, to assist in a report to the Los Angeles County Board of Supervisors on inmate violence in the Los Angeles County jails. |
| 2000-2002 | Appointed as Court Monitor, DOES v. STEWART, to monitor a system-wide class action remedial order on protective segregation for the Arizona Department of Corrections. |
| 1998-2002 | Appointed as Court Monitor, SHEPPARD v. PHOENIX, to monitor a court order on use of force in the New York City Department of Corrections, Rikers Island. |
| 2001 | Retained by the United States Department of Justice and the United States Attorney's Office, Brooklyn, New York to assist in the development of remedial plan for Nassau County Sheriff's Department, Division of Correction, Use of Force. |
| 2001 | Retained by the United States Attorney's Office, San Francisco, as an expert in UNITED STATES v. POWERS and GARCIA, a criminal civil rights prosecution for civil rights violations at the Pelican Bay State Prison. |
| 2001 | Retained by the Los Angeles County Board of Supervisors to evaluate the in-custody restraint death of a detainee. |
| 2001 | Served as a Member of the research team of the Berkman Center, Harvard Law School, to evaluate rehabilitation programs in two Jamaican maximum security prisons. |

**STEVE J. MARTIN VITA PAGE 8**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2000 | Participated as *amici curiae*, ATWATER v.CITY OF LAGO VISTA, No. 99-1408, Supreme Court of the United States, regarding custodial arrests for a non-jailable misdemeanor. |
| 1989-2000 | Retained as an expert witness and consultant, FELICIANO v. COLON, conditions litigation involving the Puerto Rico prison system. |
| 1999-2001 | Retained as an expert, MULDROW v. KEOHANE, litigation regarding the use of restraints, USP, Atlanta, Georgia. |
| 1999-2000 | Retained as an expert, SABATINO v. AMENN, class action litigation on the use of restraints, Erie County Prison, Pennsylvania. |
| 1999-2000 | Retained as a consultant to review Immigration and Naturalization Service Detention Standards, United States Department of Justice. |
| 1996-1999 | Retained as an expert, LEE v. COUGHLIN, litigation involving punitive segregation at Sing Sing/Southport prisons, New York. |
| 1998-1999 | Retained as an expert, SPATES v. IOWA CORRECTIONAL INSTITUTION FOR WOMEN, conditions litigation. |
| 1992-1995 | Retained as an expert witness, MADRID v. GOMEZ, conditions litigation involving Pelican Bay State Prison, California. |
| 1996-1998 | Retained as an expert witness, COLLINS v. ALGARIN, litigation involving excessive force at Montgomery County Jail, Pennsylvania. |
| 1994-1998 | Retained as an expert witness, ALLEN v. CHISHOLM, excessive use of force litigation involving Montana State Prison. |

**STEVE J. MARTIN VITA PAGE 9**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 1995-1998 | Retained as an expert witness, BOLTON v. COOMBE, litigation involving double celling practices at Woodbourne Correctional Facility, New York. |
| 1996-1998 | Retained as an expert witness, SOLOMON v. DELLANA, litigation involving excessive use of force at the Allegheny County Jail, Pittsburgh. |
| 1997-1998 | Retained as an expert witness, BLACKMON v. McCOTTER, litigation involving stabbing death of inmate at the Central Utah Correctional Facility. |
| 1997-1998 | Retained as an expert witness, CLARK v. CALIFORNIA, litigation involving treatment of developmentally disabled prisoners in the California Department of Corrections. |
| 1997-1998 | Retained as an expert witness, TATE v. GOMEZ, litigation involving lethal force at the Corcoran State Prison, California. |
| 1994-1995 | Retained as an expert witness by the New York Attorney General's Office, BIN-WAHAD v COUGHLIN, litigation involving claim of retaliatory transfer in New York Department of Corrections. |
| 1993-1995 | Retained as a consultant to the Texas Comptroller of Public Accounts, Performance Review of the Texas Department of Criminal Justice. |
| 1991-1993 | Gubernatorial appointee to the Texas Punishment Standards Commission; Vice-Chair, Policy Development Committee. |
| 1989-1993 | Retained as a consultant and expert witness on prison and jail litigation by the Texas Attorney General's Office. |
| 1992-1993 | Retained as a consultant, BENJAMIN v. ABATE. Principal author of <u>Reports of Plaintiffs' Expert Consultants on Conditions in the New York City Jails</u>, Legal Aid Society, |

New York.


**STEVE J. MARTIN VITA PAGE 10**
**Representative Professional Activities (continued)**


| | |
|---|---|
| 1991-1992 | Staff Director, Study Committee on Judicial Education, Texas Supreme Court.  Principal investigator for the <u>Report on Judicial and Court Personnel Education Programs.</u> |
| 1990-1992 | Retained as an expert witness and consultant, JENSEN v. CLARKE, crowding litigation involving Nebraska State Prison, Lincoln, Nebraska. |
| 1989-1993 | Retained as a consultant on litigation involving numerous county jails including Detroit, Seattle, Houston, Austin and San Antonio. |
| 1989-1991 | Assisted Texas Legislature on the development of criminal justice legislation, 71st and 72nd Legislatures. |
| 1988-1989 | Gubernatorial Appointee to Texas Council on Offenders with Mental Impairments; Chairman, Legislative Subcommittee. |
| 1986-1990 | Retained by Corrections Corporation of America, Nashville, Tennessee, to assist in the development and operation of private prison facilities in Texas. |
| 1988-1992 | Employed as expert witness by Prison Law Office, San Quentin on litigation involving Vacaville, San Quentin and Tracy prisons. |
| 1987-1993 | Employed as expert witness by Prisoners Legal Services of New York on litigation involving Attica and Elmira prisons. |
| 1987-1989 | Employed as expert witness by NAACP LDF, New York on death row conditions litigation in Missouri and Arkansas. |

**TEACHING/LECTURES/SYMPOSIUMS:**

| | |
|---|---|
| 2010 | Participant, Department of Homeland Security, "Roundtable on Mental Health and Immigration Enforcement." |

**STEVE J. MARTIN VITA PAGE 11**
**Teaching/Lectures/Symposiums (continued)**

| | |
|---|---|
| 2009 | Speaker, Texas Criminal Defense Lawyers Association, Seminar, Post Conviction Law and Criminal Administrative Remedies, *Status of Prisoners' Rights in Today's Criminal Justice Arena*, January 9, 2009. |
| 2005 | Testified before Commission on Safety & Abuse in America's Prisons on Staff Use of Force in United States Confinement Settings; April 20, 2005, Tampa, Florida. |
| 2003 | Symposium on Prison Reform, Pace Law School, Judicial Institute and the Open Society; moderator and presenter for Effective Post-PLRA Settlement Models, October 2003. |
| 2001 | Presenter, Southern Methodist University School of Law, Colloquium on the Judicial Work of Judge William Wayne Justice, May 2001. |
| 2000 | Guest Lecturer, University of Minnesota Law School, Institute of Criminal Justice; "Responding to the Crowded Jail, Legal Issues." |
| 1999 | Visiting Scholar, Institute of Criminology and School of Law, Queen's University, Belfast, Ireland; Seminar: "Punishment as Big Business: The Iron Triangle," October 1999. |
| 1999/2000 | Guest Lecturer, New York University School of Law. |
| 1995 | Guest Lecturer, National Association of Attorneys General Annual Conference; "The Role of Experts in Prison Litigation." |
| 1995 | Testified before the United States Senate Judiciary Committee as a panel member on the Prison Litigation Reform Act. |
| 1990 | Southwest Texas State University, San Marcos, Texas. Adjunct faculty - taught corrections course. |
| 1989 | St. Edwards University, Austin, Texas.  Adjunct faculty - taught corrections course. |

**STEVE J. MARTIN VITA PAGE 12**
**Teaching/Lectures/Symposiums (continued)**

| | |
|---|---|
| 1988 | Technical Assistance Consultant, National Institute of Corrections Boulder, Colorado. |
| 1986 | The University of Texas School of Law, Austin, Texas. Visiting faculty - taught seminar on institutional reform litigation. |
| 1979-1981 | Langston University, Tulsa, Oklahoma.  Adjunct faculty - taught probation and parole, corrections, and criminology courses. |
| 1976-1977 | Pan American University, Edinburg, Texas. Adjunct faculty – taught corrections courses. |
| 1973-1974 | Sam Houston State University, Huntsville, Texas.  Graduate Fellow - taught course in social problems. |

**PUBLICATIONS/PAPERS:**

Kercher, Glen A. And Steve J. Martin, "Severity of Correctional Officer Behavior in the Prison Environment," presented before the Texas Academy of Science, Huntsville, Texas, 1975.

Martin, Steve J., and Sheldon Ekland-Olson, Texas Prisons: The Walls Came Tumbling Down, Austin: Texas Monthly Press, 1987.

Ekland-Olson, Sheldon and Steve J. Martin, "Organizational Compliance with Court-Ordered Reform," 22 *Law and Society Review* 359, 1988.

Martin, Steve J., "Prisoners' Rights", *Texas Tech Law Review*, Volume 20, Symposium 1989, Number 2.

Martin, Steve J., "Texas Prisons: A Brooding Crisis Behind Bars", *Texas Lawyer*, March 13, 1989.

Martin, Steve J., and Sheldon Ekland-Olson, "Ruiz, A Struggle Over Legitimacy", Courts, Corrections and the Constitution: The Impact of Judicial Intervention on Prisons and Jails, edited by John J. DiIulio, Jr., Oxford University Press, 1990.

Martin, Steve J., "The Celling of Texas", *Texas Observer*, January 11, 1991.

Martin, Steve J., "An End to Ruiz: Shifting the Debate from Rhetoric to Reason", Texas Public Policy Foundation, April 1995.

**STEVE J. MARTIN VITA PAGE 13**
**Publications (continued)**

Grant, Darlene  and Steve Martin, "Should Prison Reform Litigation Be Curtailed?" National Council on Crime and Delinquency *Focus*, May 1996.

Martin, Steve J., "Prison Reform Litigation: Shifting the Debate From Rhetoric to Reason," Alan Fortunoff Criminal Justice Colloquium, Center for Research in Crime and Justice of New York University School of Law, February 26, 1996.

Martin, Steve J., Perspectives on Justice, "Inmates Haven't Changed, Prisons Have," *Los Angeles Times*, July 1998.

Martin, Steve J., "Sanctioned Violence in American Prisons," <u>Building Violence: How America's Rush to Incarcerate Creates More Violence</u>, edited by John May, Sage Publications, Inc., January 2000.

Martin, Steve J., "Corrections in the New Millennium: The Mean Season," *Voice for the Defense*, Texas Criminal Defense Lawyers Association, Vol.29 Number 2, March 2000.

Martin, Steve J., "Introduction," *Frontiers of Justice, Volume 3: The Crime Zone*, Biddle Publishing Co., Brunswick, Maine, March 2000.

Martin, Steve J., Book Review: Going Up the River: Travels in a Prison Nation, Punishment & Society, *International Journal of Penology*," Vol. 4, Number 1, January 2002.

Martin, Steve J. Book Review: Punishment & Democracy: Three Strikes and You're Out in California, *British Journal of Criminology*, Vol.43, Number 1 Winter 2003.

Martin, Steve J.,  Book Review: Maconochie's Gentlemen: The Story of Norfolk Island and the Roots of Prison Reform, *British Journal of Criminology*, Vol.43, Number 4 Autumn 2003.

Hill, Debbie, Larry Hammond, Bruce Skolnik, Steve J. Martin and Donna Clement; "Effective Post-PLRA Settlement Models: A Case Study of Arizona's Protective Segregation Lawsuit," 24  *Pace Law Review* 743 (Spring 2004).

Martin, Steve J., Staff  Use of Force in U.S. Confinement Settings; Commission on Safety and Abuse in America's Prisons, 601 Thirteenth St., N.W., Washington, D. C., *Washington  Journal of Law & Policy*, Volume 22 (2006 ).

Martin, Steve J., Staff Use of Force in U. S. Confinement Settings: Lawful Control Versus Corporal Punishment; *Social Justice Quarterly,* Vol. 33, No.4 (2007).

Martin, Steve J., Effective Expert Witnessing in Corrections Litigation: Rules, Relevance & Reliability, *Correctional Law Reporter;* Volume XX No.1, June/July 2008.

                    STEVE J. MARTIN--TESTIMONY/DEPOSITION/AFFIDAVIT
                           January 2006 thru January 2011

1. DISABILITY ADVOCATES INC., V NEW YORK STATE OFFICE OF MENTAL
HEALTH, et al., 02-Civ.4002 (GEL); retained by plaintiffs'
attorneys, Davis Polk & Wardwell, 450 Lexington Ave., New York, NY
10017; testified through deposition regarding placement of mentally
ill inmates in disciplinary segregation in the New York State
Department of Corrections.

2. USA v Terrell County, Georgia, 1:04-CV-76-3 (WLS); retained by
the U.S. Department of Justice; testified through declaration
regarding conditions of confinement at the Terrell County Jail.

3.McCRACKEN v MELANCON, USDC WD/LOUISANA, CV 6:04CV1707; retained
by David Benoit, PO Box 877, Breaux Bridge, Lousiana 70517;
testified through deposition regarding inmate protection from harm
at the Arcadia Parish Jail, Crowely, Lousiana.

4. GILLIS V LITSCHER, et al., USDC ED/WIS, 02-CV-463; retained by
Pamela McGillivray, Garvey McNeil & McGillivray, 634 W. Main St.,
Madison, WI 53703; testified through deposition regarding
conditions of confinement at the Wisconsin Secure Program Facility.

5. SIFUENTES v CITY OF CORSICANA, et al., USDC ND/TX, 3-04DV-2307-
K; retained by Spencer Markle, Morgan & Weisbrod, 6800 West Loop
South, Suite 450, Bellaire, TX 77401; testified through deposition
regarding failure to protect detainee at the Navarro County Jail.

6. LEWIS, et al., v PRISON HEALTH SERVICES, et al., USDC
ND/GEORGIA; retained by Brian Spears, 1126 Ponce de Leon Ave, NE,
Atlanta, Georgia; testified through deposition regarding in-custody
death during application of force at Gwinnett County Jail.

7. HOLLOWAY v MITCHELL-ODDEY, et al., New York District Court,
ND/New York; retained by Stacy L. Graczyk, Prisners's Legal
Services of New York, 121 Bridge St., Suite 202, Plattsburgh, New
York 12902; testified through deposition regarding use of force at
the Upstate Correctional Facility, Malone, New York.

8. THOMPSON v TILTON, U.S. District Court, Northern District of
California; retained by Don Specter, Prison Law Office, General
Delivery, San Quentin, CA 94964; testified through declaration
regarding death row conditions at San Quentin.

9. IKO v GALLEY, et al., U. S. District Court, District of
Maryland; retained by Gary Adler, O'Connor & Hannan, 1666 K Street,
Washington, D.C. 20006; testified through deposition regarding use

                                    1

                          ┌─────────────────────┐
                          │  **Martin Exhibit B**  │
                          └─────────────────────┘

of force at the Western Correctional Institution, Cumberland, Maryland.

10. WISEMAN v ARMSTRONG, et al., SUPERIOR COURT, STATE OF CONNECTICUT; retained by Antonio Ponvert, Koskoff,Kosokoff & Beider, 350 Fairfield Ave., Bridgeport, Connecticut 06604; testified through deposition and trial regarding use of force at the Garner Correctional Facility, Newtown, Connecticut.

11. BAKER v STATE OF CALIFORNIA, et al., U.S. District Court, Eastern District of California, Sacramento Division; retained by Davey Turner, 215 No. San Joaquin St., Stockton, CA 95202; regarding use of force at the Chaderjian Youth Facility, Stockton, CA.

12. WILKERSON, et al. v STALDER, et al., U.S. District Court, Middle District of Louisiana; retained by George Kendall, Holland & Knight, 195 Broadway, NY, NY 10007; regarding the placement of plaintiffs in extended lockdown at the Louisiana State Penitentiary, Angola.

13. NEALOUS v OZMINT, U.S. DISTRICT COURT, SOUTH CAROLINA; retained by John Slosson, Nelson Mullins, 151 Meeting Street, Charleston, SC 29401; regarding the inmate disciplinary procedures of the South Carolina Department of Corrections.

14. STATE OF OHIO v HANCOCK, COURT OF COMMON PLEAS, WARREN COUNTY, OHIO; retained by Greg Myers, Ohio Public Defender's Office, 8 East Long Street, Columbus, Ohio 43215; testified during punishment phase of death penalty trial.

15. BERNAL v STATE OF ARIZONA, SUPERIOR COURT, MARICOPA COUNTY, ARIZONA; retained by Michael Anthony, Carson, Messinger Elliott, 3300 North Central Avenue, Phoenix, AZ 85012; testified by affidavit regarding prison homicide in the Arizona Department of Corrections.

16.STATE OF OHIO v HANNA, COURT OF COMMON PLEAS, WARREN COUNTY, OHIO; retained by Ohio Public Defender's Office, 8 East Long St., Columbus, Ohio 43215; testified evidentiary hearing in federal court.

17. TINEY-BEY, et al.,v PETERS, et al., USDC ND/ILL; retained by Everett J. Cygal, Schiff-Hardin, 6600 Sears Tower, Chicago, Ill 60606; testified by deposition and trial regarding conditions at the Illinois Treatment & Detention Facility for Sexually Violent Persons.

18. STATE OF FLORIDA v DICKENS, et al., Circuit Court, 14th Judicial District of State of Florida, in and for Bay County; testified by deposition regarding the death of Martin Lee Anderson.

19. BENJAMIN v HORN, et al., USDC SD/NY; retained by John Boston, the Legal Aid Society, Prisoners' Rights Project, 199 Water St., New York, New York; testified by affidavit regarding conditions of confinement at the Central Punitive Segregation Unit, New York City Department of Corrections.

20. STRUTTON & MURRELL v MISSOURI DEPT OF HEALTH; USDC ED/Missouri; retained by Roger Heidenreich, Sonnenschein Nath & Rosenthal, One Metropolitan Square, Suite 3000, St. Louis, MO 63102; testified by deposition regarding the conditions of confinement at the Missouri Sexual Offender Treatment Center, Farmington, MO.

21. JOHNSON v SOUTHERN HEALTH PARTNERS, et al., USDC MD/GEORGIA; retained by Brian Spears, 1126 Ponce de Leon Ave., NE, Atlanta, Georgia; testified by deposition regarding use of force at the Houston County Detention Center, Warner Robins, Georgia.

22. M.P.et al., v TEXAS YOUTH COMMISSION, District Court of Travis County, 53rd Judicial District; retained by Richard Lavallo, Advocacy, Inc., 7800 Shoal Creek, Suite 171-E, Austin, TX 78757; testified at hearing regarding use of force.

23. YOUNG v COUNTY OF COOK, et al., USDC ND/ILLINOIS; retained by Mike Kanovitz, Loevy & Loevy, Chicago; testified by deposition regarding strip searches at the Cook County Jail.

24. RUTLEDGE & MEJIA v COUNTY OF COOK, et al., USDC ND/ILLINOIS; retained by Matthew O. Skoglund, Sonnenschein, Chicago; testified by deposition and trial regarding use of force at the Cook County Jail.

25. STATE OF NEVADA v TAMIR HAMILTON, Washoe County, Nevada, CR06-2500; retained by Washoe County Public Defender; testified during punishment phase of death penalty trial.

26. WELLS v STATE OF LOUISIANA, et al., 6th Judicial District Court, Parish of Madison, 96-127;retained by Tony Bruscato, PO Box 2374, Monroe, LA 71207; testified by deposition regarding death of inmate confined at the Madison Parish Detention Center, Tallulah, LA.

27. WILLIAMS v GWINNETT COUNTY, et al., USDC ND/Georgia, 1:06-CV-0051-RWS; retained by Joan Crumpler, Morgan & Morgan, 191 Peachtree St., Atlanata, GA 30303; testified by deposition regarding death of inmate confined at the Gwinnett County Detention Center.

3

28. FAIRLEY & GACKOWSKI v ANDREWS, et al., USDC ND/ILLINOIS, 03-C 5207; retained by Mary Rowland, Gessler Huges Socol, 70 West Madison St., Chicago, Illinois 60602; testified by deposition re deprivation of 1st Amendment rights under Sectin 1983.

29. PAULIN v ZALUCKY, et al., USDC SD/NY, 01 Civ. 2686; retained by Amy Howlett, Sullivan & Cromwell, 125 Broad St., NY, NY 10004; testified by deposition re excessive use of force at the Fishkill Correctional Institution.

30. VERGES v STATE OF NEW YORK, COURT OF CLAIMS, 107755, Syracuse; retained by Joan Magoolaghan, Koob & Magoolaghan, 221 Devoe Ave., Yonkers, NY 10705; testified at trial re protection from harm at the Cape Vincent Correctional Facility.

31. LEORNARD v STATE OF LOUISIANA, et al., USDC WD/LA, Shreveport Div., No.07-cv-0813; retained by Katie Swchartzmann, P.O. Box 56157, New Orleans, LA 70156; testified by deposition re publication censorship at the David Wade Correctional Center, Louisiana Department of Public Safety and Corrections.

32. ESTATE OF ILETA ZANK v COUNTY OF EATON, et al., USDC MICHIGAN, Southern Division; retained by Neil Wilensky, 6500 Centurion Dr., Lansing, MI 48917; testified by deposition re jail suicide.

33. CARTY v GOVERNOR DEJONGH, USDC VIRGIN ISLANDS, St. Thomas; retained by Eric Balaban, National Prison Project, 915 15th St., NW, Washing, DC 20005; testified at trial re conditions of confinement at St. Thomas prisons.

34. HICKS v HETZEL, USDC MD/ALABAMA, retained by Sarah Geraghty, Southern Center for Human Rights, 83 Poplar St., Atlanta, Georgia, 30303; testified by deposition re conditions of confinement at the Donaldson Correctional Facility.

35. SIVERSTEIN v FEDERAL BUREAU OF PRISONS, USDC COLORADO, retained by Laura Rovner, Civil Rights Clinic, University of Denver, 2255 E. Evans Ave., Denver, CO. 80208; testified by deposition re confinement of prisoner in extreme isolation at Administrative Maximum Facility ("ADX"), Florence, CO.

36. KALM v KEARNEY, Superior Court of the State of Delaware In and for Kent County, retained by Stephen Hampton, Grady & Hampton, 6 North Bradford, Dover, Delaware 19904; testified by deposition re use of force at the Sussex Correctional Institution.

37. TORRES v LUCIO, USDC/SD TEXAS, retained by Alberto L. Guerrero, Reed, McLain & Guerrero, 3900 North 10th Street, Suite 850, McAllen, Texas 78501; testified by deposition re in-custody death at the Cameron County Jail, Brownsville, Texas.

38. ROBINSON v HORN, USDC WD/PENN, retained by Mary Walsh, Community Justice Project, 429 Forbes Ave., Pittsburgh, PA; testified at trial re restraints policies the State Correctional Institution, Pittsburgh.

39. SOLIS v BACA, USDC CD/CALIFORNIA, retained by Barry Litt, Litt, Estuar, Harrison & Kitson, 1055 Wilshire Bldv., Los Angeles re body cavity searches at the Los Angeles County Jails; testified by deposition.

40. DUNLAP v ZAVARAS, USDC COLORADO, retained by Gail K. Johnson, 1401 Walnut Street, Suite 201, Boulder, CO 80302, re outdoor recreation at the Colorado State Penitentiary for death row inmate; testified by deposition.

41. SHREVE v REED, USDC SD/OHIO, retained by Jane Perry, Ohio Legal Rights Services, 50 W. Broad St., Columbus, Ohio 43215, re use of force at Franklin County Jail, Columbus; testified by deposition.