IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**MARCIE HAMILTON and JAMIE BROJANAC, all on behalf of themselves and all others similarly situated;**

 **Plaintiffs,**

v.               Case No.: 3:10cv355/MCR/EMT

**WENDELL HALL, in his official capacity as Sheriff for Santa Rosa County, Florida,**

 **Defendant.**
_____/

## ORDER

  The Plaintiffs filed a complaint on behalf of themselves and all others similarly situated against Wendell Hall, the Sheriff of Santa Rosa County, Florida ("Sheriff") (doc. 43), challenging a policy requiring all outgoing mail, except legal and other privileged correspondence, to be in postcard form.  On May 26, 2011, the court certified the matter as a class action.  The court thereafter scheduled a bench trial; prior to the trial, however, the parties advised the court that they had reached a tentative settlement and requested that the trial be continued.  The court continued the trial and directed the parties to submit a proposed settlement agreement and consent decree, along with the notice to be provided to potential class members.  On December 2, 2011, the court held a hearing to make a preliminary determination as to the fairness, reasonableness, and adequacy of the proposed settlement and sufficiency of the notice.  At the conclusion of the hearing, the court approved the parties' proposed notice and scheduled a final fairness hearing for

January 11, 2012.[1]

Before the fairness hearing, the court received an objection to the proposed settlement from Jeffrey A. Dickstein, an inmate in the Santa Rosa County Jail ("Jail").[2] In his objection, Dickstein complained that he did not have adequate access to the Jail's law library and thus could not offer legal support for his objection, as required by the notice. The court therefore rescheduled the fairness hearing, allowed Dickstein additional time in which to submit authority in support of his objection, and ordered the Sheriff to allow Dickstein reasonable access to the Jail's law library so that Dickstein could submit support for his objection within the time allowed. Dickstein responded twice to the court's order, initially setting forth the requests for legal materials he submitted and then complaining that he had not received all of the materials he requested but nevertheless citing authority in support of his objection. No other objections were filed.

A court may approve a class action settlement only after a hearing and on a finding that the settlement is fair, reasonable, and adequate and not the product of collusion between the parties. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also Canupp v. Liberty Behavioral Health Corp.*, 417 Fed. Appx. 843, 845 (11th Cir. 2011). "Determining the fairness of the settlement is left to the sound discretion of the trial court," and the court's decision will not be overturned "absent a clear showing of abuse of that discretion." *Bennett*, 737 F.2d at 986. In deciding the propriety of a district court's order approving or rejecting a class action settlement, the Eleventh Circuit "is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id.*

---

[1] The notice informed inmates of the pendency of the class action lawsuit and the fact that a tentative settlement had been reached. It also set forth the terms of the proposed settlement and advised inmates that they could comment on or object to the settlement by filing a written Statement of Objection or Comment setting forth the factual and legal basis of each comment or objection. The notice further advised inmates that a fairness hearing would be conducted at which they – or an attorney on their behalf – could present comments or objections. In order to appear at the hearing or have an attorney appear on their behalf, inmates were required to submit a Notice of Intention to Appear.

[2] The court notes that Dickstein is an attorney serving a 90-day sentence for criminal contempt.

Case No: 3:10cv355/MCR/EMT

In determining whether a settlement is fair, reasonable, and adequate, the court considers the following factors: (1) the likelihood of success at trial; (2) the range of possible relief; (3) the point on or below the range of possible relief at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to settlement; and (6) the state of proceedings at which the settlement was achieved.  *See id.*  "In balancing these factors, the court [is] entitled to rely upon the judgment of experienced counsel for the parties."  *Canupp*, 417 Fed. Appx. at 845.  "Indeed, absent fraud, collusion, or the like, a district court should be hesitant to substitute its own judgment for that of counsel."  *Id.*  The court also should not try the case on its merits, and it "should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained [because] inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (11th Cir. 1977) (internal marks omitted).  Moreover, if there are objections to the settlement, the court must allow the objectors to be heard but it is not "required to open to question and debate every provision of the proposed compromise."  *Id.* at 1331.  "The growing rule is that the trial court may limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision."  *Id.*  But "[t]he [c]ourt should examine the settlement in light of the objections raised and set forth on the record a reasoned response to the objections including findings of fact and conclusions of law necessary to support the response."  *Id.* "In assessing the fairness of the proposed compromise, the number of objectors is a factor to be considered but is not controlling.  A settlement can be fair notwithstanding a large number of class members who oppose it."  *Id.* (internal citation omitted).

The fairness hearing in this matter was conducted on February 9, 2012.  Present at the hearing were class counsel, counsel for the Sheriff, and a representative from the Sheriff's office.[3]  Counsel for the parties represented to the court that the settlement was reached after extensive arms-length negotiations, and there is no evidence to suggest

---

[3] None of the class members requested to attend the hearing and thus no class members were present.

otherwise or that the settlement was the product of collusion between the parties or their counsel.  Moreover, the court is familiar with the plaintiffs' allegations in this matter, as well as the applicable law, and is of the opinion that the plaintiffs had a strong likelihood of succeeding on the merits of their claims.  If the plaintiffs had prevailed, the policy at issue could have been invalidated and the Sheriff could have been enjoined from enforcing it. Accordingly, the Settlement Agreement and Consent Decree provides for significant benefits to the plaintiffs, allowing them substantially less restricted access to the mail and writing supplies than they have under the existing policy; it also protects the Sheriff's security and staffing concerns.  Having carefully reviewed the Settlement Agreement and Consent Decree, it is clear to the court that both parties conceded on certain issues in order to resolve the matter, and counsel confirmed that fact at the hearing.  Based on the facts and law, the court finds that the relief is fair, reasonable, and adequate.

As set forth above, only one class member – Jeffrey A. Dickstein – objected to the proposed settlement.  Although Dickstein objected on a number of grounds, each of his objections was based on either a misreading or a misunderstanding of the proposed Settlement Agreement and Consent Decree.  Dickstein first argued that the Settlement Agreement and Consent Decree contained no provision for inmates to send letters other than two letters for which supplies are provided at booking.  Dickstein is simply wrong in that regard.  The Settlement Agreement and Consent Decree allows inmates to send as many letters as they desire and have the materials to write as long as the letters do not implicate certain security concerns.  Specifically,  according to paragraph 16(a), the Sheriff cannot prohibit or restrict inmates from mailing non-privileged correspondence to individuals outside the jail except when the restriction is necessary or essential to preserve internal order and discipline, maintain institutional security against escape or unauthorized entry, or rehabilitate the sentenced inmates or prevent the sending of (i) threats of physical harm against persons or threats of criminal activity, (ii) threats of blackmail or extortion, (iii) plans for escape, (iv) codes, (v) plans for activities in violation of facility rules, or (vi) information, which if communicated, would create a clear and present danger of violence and physical harm to a human being.  The Sheriff also is required to provide inmates with writing

materials at regular intervals during their incarceration. When an inmate is booked, the Sheriff is required to provide the inmate with writing materials sufficient to send two letters at no cost to the inmate. *See* ¶ 16(b). After the inmate is processed, the inmate may purchase additional writing materials sufficient to send an unlimited number of postcards and at least eight letters per week. *See* ¶ 16(e). Indigent inmates are to be provided with materials sufficient to send one letter and two postcards per week. *See* ¶ 16(c). Inmates also are entitled to unlimited envelopes for privileged mail and may receive writing materials from fellow inmates and correspondents outside the Jail. Thus, while the Settlement Agreement and Consent Decree provides for certain restrictions on outgoing mail, those restrictions are limited and, in fact, are consistent with the guidelines for censorship of prisoner mail set forth by the Supreme Court in *Procunier v. Martinez*, 416 U.S. 396 (1974). Moreover, even with the restrictions, inmates are provided greater access to the mail and to writing materials under the Settlement Agreement and Consent Decree than under the existing policy.

      Dickstein next objected to paragraph 16(h) of the Settlement Agreement Consent Decree, which provides that the Sheriff will not prohibit or restrict the number of blank postcards or envelopes an inmate can receive from outside correspondents as long as such envelopes and postcards (i) bear no postage, or (ii) have First Class postage printed and permanently affixed by a postal meter or the U.S. Postal Service. However, the Sheriff may limit the number of blank envelopes a Jail inmate may receive from outside correspondents to a maximum of two envelopes per piece of incoming correspondence and prohibit inmates from possessing more than ten such envelopes at any one time, treating as contraband any such envelopes over that amount. Dickstein complained about the restrictions set forth in paragraph 16(h), arguing that there is no viable reason to limit possession of mail from family and friends to ten pieces, as well as the fact that the provision affords the Sheriff discretion to impose restrictions. Once again, however, Dickstein has misconstrued the Settlement Agreement and Consent Decree, which does not limit the amount of correspondence from family and friends an inmate may receive or possess. Indeed, the Consent Decree restricts only the number of *blank* envelopes and postcards an inmate may

Case 3:10-cv-00355-MCR-EMT   Document 157   Filed 02/13/12   Page 6 of 8

receive in each piece of incoming correspondence and possess in his or her cell. *See* ¶ 16(h). According to the Sheriff, the restriction on blank envelopes is intended to address certain security concerns, and restrictions on the retention of paper and other such materials have been approved by courts for various reasons, including that paper and clutter in an inmate's cell can create various hazards, including a fire hazard, and blank envelopes, postcards, and other materials can be used by inmates to gamble or barter, thereby creating the risk of altercations, extortion, blackmail and other behaviors that put inmates at risk. *See, e.g., Black v. Camon*, No. 7:06cv75, 2010 WL 890159 (M.D. Ga. 2010); *Smith v. Mosley*, No. 2:03cv974, 2006 WL 559492 (M.D. Ala. 2006). The court thus finds that the restrictions set forth in paragraph 16(h) are reasonable and only minimally burdensome and thus do not undermine the fairness, reasonableness, and adequacy of the settlement. The court also would note that while the proposed Settlement Agreement and Consent Decree allows the Sheriff discretion to impose restrictions on the number of blank envelopes an inmate may receive and possess, the Sheriff has agreed to make the provision mandatory in order to alleviate his discretion in that regard, and it is the court's understanding that the Jail's policy is being revised accordingly.[4]

In his third objection, Dickstein argued that the Consent Decree limits letters from friends and family members to those containing "pre-printed metered postage," thus precluding the use of stamps which are acceptable under the current policy and are removed by detention officers prior to distribution to inmates. Contrary to Dickstein's assertions, the Settlement Agreement and Consent Decree imposes no limitation on the postage that may be affixed to incoming mail. Paragraph 16(h) simply requires that *blank* envelopes and postcards received from friends and family members contain either no postage or first class postage printed and permanently affixed by a postal meter or the U.S. Postal Service. As the Sheriff explained, this provision avoids potential security concerns stemming from inmates being provided mail with postage stamps that can be removed and used for other purposes, such as gambling or barter, or that may be infused with drugs or

---

[4] Even if the Sheriff retains discretion to impose restrictions on envelopes, such discretion would not change the court's conclusion as to the fairness, reasonableness, and adequacy of the settlement.

Case No: 3:10cv355/MCR/EMT

other contraband.  *See, e.g., VanPoyck v. Singletary*, 106 F.3d 1558 (11th Cir. 1997); *Covell v. Arpaio*, 662 F. Supp. 2d 1146 (D. Az. 2009); *Lowery v. Walton Cnty. Sheriff's Dept.*, No. 3:07cv121, 2008 WL 660332 (M.D. Ga. 2008); *Norman v. Bauer*, 2007 WL 528030 (N.D. Fla. 2007).  As the Sheriff also explained, because the provisions and restrictions set forth in the Settlement Agreement and Consent Decree will be incorporated into the Sheriff's policy and provided to inmates, this information can easily be communicated friends and family members so that they will be aware of the restrictions.

     Finally, Dickstein complained that he has not been afforded sufficient access to legal materials to substantiate his objections.  According to the Sheriff, however, Dickstein has been allowed access to legal materials in accordance with the Jail's policy, which the Sheriff maintains is consistent with applicable law.  The Sheriff states that Dickstein has met with corrections officials, who have explained to him how he may receive information from the Jail's law library and have attempted to respond to his requests, which, in may instances, are overly broad and incapable of being researched by Jail officials.  For example, Dickstein requested "all cases state or federal allowing inmates to receive from friends and family mail with postage paid by stamp vs. mail with metered postage," "all cases state and federal pertaining to due process violations in allowing sheriff without notice discretion to unilaterally punish inmates for having more than ten envelopes if more than ten envelopes was previously allowed," "all state and federal cases containing the words singular or plural inmate and/or prisoner and/or jail and/or prison together with the words singular or plural mail and/or stamp and/or postage," and "all cases state and federal pertaining to inmates receiving and/or sending mail."  As the Sheriff points out, each of these requests is inordinately broad and would require extensive research by Jail officials, which would be both unduly burdensome and expensive.  Furthermore, according to the Sheriff, when Dickstein requested specific cases or presented more narrowly drawn topics, he was provided the legal materials he requested.  In any event, considering that each of Dickstein's objections is based on a misreading and/or misunderstanding of the Consent Decree and thus is ill-founded, Dickstein would not have been able to substantiate his objections even if he had been provided all of the legal materials he requested.

For the reasons set forth above, the court finds that the parties' settlement is fair, reasonable, and adequate and that it was not the product of collusion.  The court also finds that the objections are legally insufficient to require disapproval.  Accordingly, the Settlement Agreement and Consent Decree is **APPROVED** and will be entered forthwith.[5]

**DONE and ORDERED** on this 13th day of February, 2012.


*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[5] The parties filed a Joint Stipulation Regarding Attorneys' Fees, Litigation Expenses and Costs (doc. 156) and have confirmed that there are no unresolved issues or related agreements of which the court is unaware.

Case No. 3:10cv355/MCR/EMT